## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| COLLEEN L. FAGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| VALMONT INDUSTRIES, INC., dba | ) | |
| VALMONT COATINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

COMES NOW Plaintiff Colleen L. Fagan, by and though her counsel, Ray E. Simmons and Mark G. Ayesh of the Ayesh Law Offices, and for her causes of action against the Defendant Valmont Industries, Inc., dba Valmont Coatings, Inc., alleges and states as follows:

## PARTIES

1.      Plaintiff Colleen L. Fagan is a citizen of the United States who is a resident of the state of Kansas.

2.      Defendant Valmont Industries, Inc., is a Delaware corporation doing business in the state of Kansas and whose principle office is located at One Valmont Plaza, Omaha, NE 68514.  Valmont Industries, Inc., may be served with legal process through its registered agent: The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

3.      Defendant Valmont Coatings, Inc., is a Delaware corporation doing business in the state of Kansas and whose principle office is located at One Valmont Plaza, Omaha, NE 68514.  Valmont Coatings, Inc., may be served with legal process through its registered agent: The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

**JURISDICTION AND VENUE**

4.      This is an employment case arising under the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-3, *et seq.*, and state common law.  This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1332.  This Court has supplemental jurisdiction over Plaintiff's pendent state law claim pursuant to 28 U.S.C. §1367.

5.      The unlawful practices and actions alleged below were committed within the state of Kansas, and venue is properly laid in this Court by virtue of 28 U.S.C. § 1391(b).

6.      Plaintiff has fully exhausted her administrative remedies under Title VII and under the ADEA.  On October 21, 2015, Plaintiff filed a sex and age discrimination and retaliation charges with the U.S. Equal Employment Opportunity Commission (EEOC).  On November 3, 2015, Plaintiff received a Notice of Right to Sue from the EEOC.  *Colleen L. Fagan vs. Valmont Industries, Inc., dba Valmont Coatings, Inc.,* EEOC Charge No. 563-2015-00135 and 563-2015-00136.

**FACTS**

**A.      Valmont Industries / Valmont Coatings**

7.       Plaintiff incorporates paragraphs 1 through 6 of this complaint.

8.      Valmont Industries' corporate officers [1] are:

President:          Mogens C. Bay

Vice President:     Mark C. Jaksich

Secretary:          Todd Adkinson

---

[1] Valmont Industries Annual Report to the Kansas Secretary of State, filed March 30, 2015; see also, Valmont Industries 2014 Annual Report to Stockholders, pp. 10-11.

9.      Valmont Coatings, Inc., is a wholly owned subsidiary of Valmont Industries, Inc.,

whose corporate officers [2] are:

President:              Mark C. Jaksich

Vice President:          R. Andrew Massey

Secretary:              Richard S. Cornish

10.     Valmont Industries, Inc. (NYSE: VMI), is a large, publicly held American

manufacturer of valley center pivot and linear irrigation equipment, windmill support structures,

lighting and traffic poles and steel utility poles.  In 2014, Valmont Industries, including its

subsidiaries, had net earnings in the amount of $189 million. [3]

11.     Valmont Industries' corporate office, main plant and aviation department is in

Omaha.  Valmont Industries has locations worldwide in the United States, Europe, Australia,

India, China and Southeast Asia.

12.     Valmont Coatings is a full-service coating company specializing in Hot-Dip

Galvanizing, Powder Coating, Anodizing, Liquid Coating and E-Coat Finishes to extend the

service life and visual appeal of products of all shapes and sizes.  Valmont Coatings, Inc.'s

principle office is located at One Valmont Plaza, Omaha, NE 68154.

13.     Valmont Coatings operates a hot-dip and spin galvanizing plant in Salina, located

at 1100 N. Ohio Street, Salina, KS 67401 (785-452-9630).  Valmont - Salina Galvanizing's

facility serves steel fabrication markets in the Midwest and throughout the country.  The Salina

facility has the capacity to galvanize steel products of almost any size or shape, from a single

---

[2]  Valmont Coatings' Annual Report to the Kansas Secretary of State, filed March 30, 2015.

[3] www.valmont.com

multi-ton item, to thousands of small parts. With the largest kettle by zinc volume in the world

and a lifting capacity of 100,000 pounds, Valmont's Salina facility has the ability to dip the

largest steel products in a single dip.  The facility also offers other coating services including

ground-line protection (CorroCote), De-glaring, UV Protection/Sealing, and Sandblasting.[4]

**B.      Corporate Management Employees Identified in this Complaint**

Don Fritz, Regional Manager, Galvanizing Services
Valmont Industries, Inc., Omaha, Nebraska

Karen Finkenbiner, Human Resources Director
Valmont Industries, Inc., Omaha, Nebraska

Scott Carnahan, Corporate Health and Safety Director
Valmont Industries, Inc., Omaha, Nebraska

Grahame Barker, Safety, Facilities, Environmental Manager
Valmont Industries, Inc., Omaha, Nebraska

Molly Cook, North American Safety Manager, Coatings and Tubing Divisions
Valmont Industries, Inc., Omaha, Nebraska

Jeffrey Lackey, Operations Manager
Valmont - Salina Galvanizing, Salina, Kansas

Michael G. Kotik, Assistant General Manager (acting GM)
Valmont - Salina Galvanizing, Salina, Kansas

Dan Cavanaugh, Safety Manager
Valmont Coatings Oklahoma Galvanizing, Claremore, OK

**C.      Facts in Support of this Complaint:**

14.      Colleen Fagan is a 45-year-old female.

15.      Fagan was employed at the Valmont Coatings facility in Salina, Kansas, from

November 19, 2011 to August 27, 2015, as the Human Resources Generalist and Safety

---

[4]  www.valmontcoatings.com; www.facebook.com/SalinaGalvanizing.

Coordinator.

16.     Throughout Fagan's employment with Valmont, she directly reported to Michael Kotik, who treated her in a demeaning and disrespectful manner.  For example, on one occasion in 2012, Kotik threw a tape measure at Fagan in anger, causing her to duck.  Kotik did not treat any male members of the management team in a similar demeaning and disrespectful manner. Kotik is five years younger than Fagan.

17.     As the Human Resources Generalist, Fagan frequently observed sexually offensive comments by male employees.  Fagan did not have any authority to take corrective action on her own.  When Fagan reported the offensive incidents to Kotik, he trivialized the complaints and failed to take corrective action against the offending male employee.

18.     Commencing in 2013 and continuing throughout her employment, Fagan reported to Valmont management employees, verbally or by email correspondence, frequent and continuous safety violations, contrary to OSHA regulations, DOT regulations or company policy, including but not limited to:

        a.     Employees' failure to use required fall protection;

        b.     Employees' failure to use required personal protective equipment;

        c.     Employees working under loads suspended by cranes or forklifts;

        d.     Employees' failure to use required respirators in required work areas;

        e.     The company's failure to properly supply, fit or test required safety equipment;

        f.     Employees operating forklifts and cranes for which they were not certified, causing structural damage to facility;

        g.     Employees operating company vehicles requiring CDL licensing without

the required CDL or DOT medical card;

h.      Employees bringing firearms to the workplace (encouraged and permitted

by Kotik and Lackey, to shoot pigeons in the facility).

19.      Commencing in 2013 and continuing throughout her employment, Fagan reported

to Valmont management employees, verbally or by email correspondence, frequent and

continuous violations of company policy pertaining to the financial affairs of the company,

including but not limited to:

a.      Theft of fuel;

b.      Theft of and personal / private sale of company owned metal salvage;

c.      Theft of equipment;

d.      Employees' purchase of tires on the company's commercial accounts.

20.      After Fagan continuously provided documentation of her complaints, Michael

Kotik and Jeff Lackey instructed Fagan not to take any more photographs of safety violations.

21.      When Fagan reported safety concerns that were reported to her by employees,

Kotik and / or Lackey retaliated against the reporting employees, by verbally reprimanding them,

by instructing them to make such reports through their chain-of-command, or by instructing them

not to report the matters to Fagan.

22.      When Fagan reported safety issues about equipment to Kotik or Lackey,

corrective action was rarely, if ever, taken.  Lackey was required to review any type of accident

that occurred at the facility, and he was often dilatory about providing information to be entered

into the EHS system. [See ¶ 28 below].

23.      In March 2014, Kotik instructed Fagan that she was no longer authorized to

conduct any investigations or to issue any corrective actions.  Karen Finkenbiner agreed with

Kotik.  Fagan was advised that she was in an <u>advisory</u> position.

24.      In November 2014, Valmont designated the Salina Galvanizing facility as a safety focus site because of recent accidents involving fractures and multiple OSHA reportable incidents, *i.e.*, twelve reportable incidents in 2013 and four reportable incidents in the first seven months of 2014.  Corporate safety managers Scott Carnahan and Grahame Barker came to the facility to conduct mandatory safety training with management.  Molly Cook attended by video conference.  Dan Cavanaugh came up from the Oklahoma facility to participate.  Kotik and Lackey refused to attend.  When their absence from the mandatory training was reported to Don Fritz, both attended – but were verbally and visually agitated.  Kotik aggressively spoke to Fagan in a demeaning and disrespectful manner in front of those attending the training.  Dan Cavenaugh told Fagan that the atmosphere in the training was "tense – you could feel the tension in the room."  At the end of the training, Scott Carnahan told Fagan, "It's apparent that Mike Kotik thinks of you as only a <u>secretary.</u>"  Carnahan also told Fagan that her safety concerns were valid.

25.      Shortly after the conclusion of the safety training in November 2014, Fagan spoke with Karen Finkenbiner by telephone.  Fagan went into great detail to report the manner in which she was treated by Kotik.   Fagan told Finkenbiner of multiple issues she had with employees regarding a sexually hostile work environment and her complaints to Kotik, to which he took little action.  Fagan told Finkenbiner of Kotik and Lackey's disregard for safety matters, and that the facility was rife with favoritism – those favored by Kotik ignored policies and were not disciplined for safety violations.  Fagan expressed a fear that she would be fired.  Finkenbiner assured Fagan that she was "protected as a whistleblower."

26.      Subsequently, Kotik was summoned to Omaha.  Upon Kotik's return to Salina, Kotik avoided Fagan.

27.     In May or June, 2015, Fagan, Kotik and Finkenbiner were notified that the

attorney for a former employee, who had been fired, wanted to take the deposition of the "on-site

human resources manager" in the former employee's workers compensation claim he filed

against the company. [5]  When Fagan discussed the deposition request with Kotik, he asked her

what she was going to tell them.  Fagan told Kotik, "I'll be under oath.  I'll have to tell the truth."

The next day, Finkenbinder notified Fagan that Kotik could handle the deposition – that he was

the person who fired Bowles.

28.     On or about August 4 or 5, 2015, a fire occurred at the Salina facility.  Fires were

important safety and financial issues to Valmont because a major fire that had occurred at one of

its locations.

     a.     Steve Adams, the master electrician on site, reported to Fagan that an electrical

          box had caught on fire, burning it and the wall, and that it could have burned the

          whole building down.  Adams told Fagan, "I'm coming to you because you'll do

          what's right."  Adams believed that the incident would go unreported and be

          "swept under the rug."

     b.     The fire was required to be reported on the Valmont Environmental Health and

          Safety (EHS) Management System software program.

     c.     Fagan waited a few days to receive a report.  By protocol, Fagan should have

          received a report from Jeffrey Cottrell or from Kotik, Lackey or Arnold Peplinski,

          Maintenance Supervisor.

     d.     On Friday, August 7, 2015, Fagan called Molly Cook and asked her if she had any

---

[5] *Dustin Bowles v. Valmont Industries,* Docket No.  1074130 (Kan. Workers
Compensation Div.)

information concerning the electrical fire.  Cook asked when it was put into EHS?

e.      Later, Kotik went into Fagan's office and began yelling at her.  Kotik yelled that

he didn't appreciate Fagan telling Molly Cook how he was hiding things.  Kotik

had received a call from Don Fritz about the matter.  Kotik instructed Fagan to get

with Peplinski to obtain the information that was needed.  Peplinski had already

left for the day, at 1 pm.  Subsequently, Cottrell and Fagan entered what

information Cottrell had into EHS to open an investigation.

f.      Fagan called Molly Cook to ask what she had told Don Fritz.  Cook denied telling

Fritz that Kotik was "hiding things."  Cook told Fagan that she was "sorry," that

Fagan was doing a "good job" and that Fagan should "watch her back."

g.      On Monday, August 10, 2015, Molly Cook went to the Salina galvanizing facility

and conducted a "walk around the shop floor" with Kotik and Lackey.  Fagan was

excluded from the meeting.

29.      On the morning of August 27, 2015, Finkenbiner terminated Fagan's employment.

Finkenbiner contended that Fagan violated a company policy by becoming engaged to another

employee.  Finkenbiner contended that Fagan had supervisory authority over her fiancé.

a.      At the time, Fagan had been in a relationship with the employee for a significant

period of time and it was well-known among the management of the facility,

including Kotik and Lackey.

b.      No one ever suggested to either of them that their relationship was against any

company policy.

c.      Fagan supervised no one, had no subordinate employees, did not have any

authority to hire, fire or discipline any Valmont employee or the power to direct or

control their duties or hours of work.  [See ¶ 23 above.]

d.      As Human Resources Generalist, Fagan had not seen such a company policy, nor

had it been discussed with her.

30.      On August 27, 2015, Kotik testified in the Bowle's deposition with Finkenbiner

present.

31.      Plaintiff suffered loss of income and garden variety emotional distress as a direct

and proximate result of her discriminatory discharge from employment.

## CAUSES OF ACTION

## 1.  TITLE VII - DISPARATE TREATMENT / GENDER

32.      Plaintiff incorporates paragraphs 1 through 31 of this complaint.

33.      Defendants discriminated against Plaintiff with respect to her compensation,

terms, conditions, or privileges of employment because of Plaintiff's sex by terminating her

employment:

a.      Fagan – the female employee – was the person terminated.  No action was taken

against the male employee.

b.      Fagan's termination was an extension and culmination of the offensive,

demeaning and discriminatory manner in which Kotik treated her – differently

from the male employees he favored.

WHEREFORE, Plaintiff Colleen F. Fagan prays for judgment in her favor and against

Defendants Valmont Industries, Inc., and Valmont Coatings, Inc., for the following relief:

A.      For monetary damages in an undetermined amount to compensate Plaintiff for

past and future economic damages and pre-judgment interest;

B.     For appropriate injunctive and/or equitable relief as this Court deems just and

proper, including but not limited to, declaratory judgment that the acts and

practices of Defendants complained of herein are in violation of Title VII of the

Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.

§ 2000e-3, *et seq.*;

C.     For compensatory damages;

D.     For punitive damages;

E.     For Plaintiff's reasonable attorneys fees and the costs of this action;

F.     For any such other and further relief this Court deems just and proper.

## 2:  Retaliatory Discharge / Whistleblowing

34.     Plaintiff incorporates by reference paragraphs 1 through 33 of this Complaint.

35.     Defendants discharged Fagan from employment in retaliation for the good-faith

reporting of serious infractions of rules, regulations, or the law pertaining to public health and

safety and the general welfare to Defendants' management employees, as set forth above.

36.     Defendants discharged Fagan from employment in retaliation for the good-faith

reporting of a serious infraction of rules, regulations, or the law pertaining to the financial affairs

of the company to Defendants' management employees, as set forth above.

WHEREFORE, Plaintiff Colleen F. Fagan prays for judgment in her favor and against

Defendants Valmont Industries, Inc., and Valmont Coatings, Inc., for the following relief:

A.     For monetary damages in excess of $75,000 to compensate Plaintiff for economic

damages, pre-judgment interest, for compensatory damages for past and future

non-pecuniary loss;

B.     For appropriate injunctive and/or equitable relief as this Court deems just and

proper;

C.     For punitive damages in the amount of $4,000,000.00;

D.     For costs;

E.     For any such other and further relief this Court deems just and proper.

### 3: Retaliatory Discharge / Workers Compensation / Public Policy

37.     Plaintiff incorporates by reference paragraphs 1 through 36 of this Complaint.

38.     Fagan – as the "on-site human resources manager" – was identified to be a witness in a Workers Compensation Claim filed by one of Defendants' former employees.

39.     Defendants discharged Fagan from employment to evade any adverse deposition testimony she might give pertaining to Defendants' employment policies and practices, the injured worker's compensation claim and reasons for the injured worker's discharge from employment.

40.     A strong public policy of the state of Kansas protects injured workers who file workers compensation claims from retaliatory discharge.

41.     A similar strong public policy can be implied from the statutory scheme protecting workers compensation deposition witnesses, which is protected against job-related retaliation, *i.e.*, K.S.A. 2013 Supp. 44-501b, pertaining to the claimant's rights and burden of proof, and K.S.A. 2013 Supp.44- 549(b), K.S.A. 551(b), K.S.A. 44-553, K.S.A. 44-554, pertaining to workers compensation depositions and witnesses.

WHEREFORE, Plaintiff Colleen F. Fagan prays for judgment in her favor and against Defendants Valmont Industries, Inc., and Valmont Coatings, Inc., for the following relief:

A.     For monetary damages in excess of $75,000 to compensate Plaintiff for economic damages, pre-judgment interest, for compensatory damages for past and future

non-pecuniary loss;

B.      For appropriate injunctive and/or equitable relief as this Court deems just and

proper;

C.      For punitive damages in the amount of $4,000,000.00;

D.      For costs;

E.      For any such other and further relief this Court deems just and proper.

Respectfully submitted,

AYESH LAW OFFICES

By: /s/ Ray E. Simmons
        Mark G. Ayesh, #10175
        Ray E. Simmons, #12296
        8100 East 22nd Street North
        Building 2300, Suite 2
        P. O. Box 781750
        Wichita, KS   67278-1750
        Telephone:  316-682-7381
        E-Mail: mayesh@ayesh.kscoxmail.com
                    rsimmons@ayesh.kscoxmail.com
            *Attorneys for Plaintiff*


**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests that the issues in this matter be heard by a jury.


**DESIGNATION OF TRIAL**

Plaintiff designates Wichita, Kansas as the location for the trial in this matter.


By: /s/ Ray E. Simmons
        Mark G. Ayesh, #10175
        Ray E. Simmons, #12296

13